## MATTER OF AMICO

### In Deportation Proceedings

### A-30164305

### *Decided by Board April 21, 1988*

(1) "Administrative closing" is merely an administrative convenience which allows the removal of cases from the calendar in certain situations, without the entry of a final order.

(2) Where, after several hearings and continuances, the respondent failed to appear at a rescheduled hearing to pursue an application for relief from deportation, the immigration judge should not have administratively closed the case, but rather should have held a hearing in absentia and entered a final order in the case.

CHARGE:

Order: Act of 1952—Sec. 241(a)(4) [8 U.S.C. § 1251(a)(4)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Pro se

ON BEHALF OF SERVICE:
Richard G. Buyniski
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

In a decision and order dated July 17, 1986, an immigration judge administratively closed the respondent's case because the respondent failed to appear for a scheduled hearing and could not be located. The Immigration and Naturalization Service appealed. The appeal will be sustained and the record will be remanded to the immigration judge for further action.

The decision which the Service seeks to have reviewed is interlocutory in nature. This Board does not ordinarily entertain interlocutory appeals. *See Matter of Ruiz-Campuzano,* 17 I&N Dec. 108 (BIA 1979); *Matter of Ku,* 15 I&N Dec. 712 (BIA 1976); *Matter of Sacco,* 15 I&N Dec. 109 (BIA 1974). However, we have on occasion ruled on the merits of interlocutory appeals where we deemed it necessary to address important jurisdictional questions regarding the administration of the immigration laws, or to correct recurring problems in the handling of cases by immigration judges. *See*

*Matter of Correa,* 19 I&N Dec. 130 (BIA 1984); *Matter of Victorino,* 18 I&N Dec. 259 (BIA 1982); *Matter of Alphonse,* 18 I&N Dec. 178 (BIA 1981); *Matter of Wadas,* 17 I&N Dec. 346 (BIA 1980); *Matter of Seren,* 15 I&N Dec. 590 (BIA 1976); *Matter of Fong,* 14 I&N Dec. 670 (BIA 1974). In the present case, we have decided to accept this interlocutory appeal in order to insure proper use of the administrative closing procedure.

The respondent is a 28-year-old native and citizen of Italy. He was admitted to the United States on May 21, 1971, as a lawful permanent resident. On January 13, 1981, an Order to Show Cause and Notice of Hearing (Form I-221) was issued against him, alleging that he had been convicted of armed robbery on two separate occasions. He was charged with deportability under section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4) (1982), as an alien who, at any time after entry, is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct.

A deportation hearing was commenced on February 14, 1985, but was continued to enable the respondent to obtain counsel. On June 4, 1985, the respondent appeared without counsel. He admitted to all the allegations in the Order to Show Cause, although he appeared to deny deportability. The respondent's conviction records were offered by the Immigration and Naturalization Service and were placed into evidence. The case was then continued so that the respondent could complete and file an application for a waiver under section 212(c) of the Act, 8 U.S.C. § 1182(c) (1982). The section 212(c) application was filed on April 22, 1986. On May 2, 1986, the respondent appeared for his scheduled hearing. He indicated that he wished to be represented by counsel but that he had been unable to find an attorney to represent him without fee. The respondent also informed the immigration judge that his parole had been revoked because he had been arrested and charged with assault and battery with a deadly weapon. He claimed to be a victim of mistaken identity and asserted that he would be cleared of the charges. He requested a continuance until such time as the criminal proceedings were completed. The Service objected to another continuance, but the immigration judge granted the respondent's request. At that time a written notice was hand-delivered to the respondent stating that his next hearing was scheduled for July 17, 1986, at 9:00 a.m. The respondent did not appear at that time. The Service was prepared to go forward with the hearing and objected to the immigration judge's administratively closing the case, but the immigration judge nevertheless issued the decision and order which are the subject of this appeal.

The Service argues in its appeal that the immigration judge acted incorrectly in administratively closing this case instead of holding a hearing in absentia and issuing a final decision. Under section 242(b) of the Act, 8 U.S.C. § 1252(b) (1982), a hearing may be held in absentia if an alien "has been given a reasonable opportunity to be present . . . and without reasonable cause fails or refuses to attend." *See Matter of Marallag,* 13 I&N Dec. 775 (BIA 1971); *see also Matter of Perez,* 19 I&N Dec. 433 (BIA 1987). In the present case, the respondent has offered no explanation for his failure to appear for the hearing.

We agree with the Service that the immigration judge should not have administratively closed this case but rather should have held an in absentia hearing and issued a final order.[1] The respondent had appeared for earlier hearings at which evidence and testimony were taken and deportability established. An application for a section 212(c) waiver was duly filed. A number of continuances were granted to give the respondent every opportunity to fully present his case. The respondent personally received written notice of the July 17, 1986, hearing. Under the circumstances of this case, there is no reason why an in absentia hearing should not have been held, and, in fact, administrative closing was inappropriate. Holding a hearing allows the entry of an order which can then be executed upon the next contact with the respondent. When a case is administratively closed, the respondent is allowed, by simply failing to appear, to avoid an order regarding his deportability, and the consequences an order of deportation could bring. We shall therefore remand this case to the immigration judge with the direction that he enter a final order in this case in absentia.

**ORDER:** The appeal is sustained and the record is remanded to the immigration judge for further action in accordance with the foregoing decision.

---

[1] The administrative closing of a case does not result in a final order. It is merely an administrative convenience which allows the removal of cases from the calendar in appropriate situations.

In a decision dated August 14, 1984, the immigration judge found the respondent deportable as charged, denied his applications for asylum and withholding of deportation, but granted him voluntary departure. The respondent has appealed from that decision. The appeal will be dismissed.

The respondent is a 33-year-old native and citizen of El Salvador who entered the United States in 1982 without inspection. He conceded deportability at his hearing. The sole issue on appeal concerns his eligibility for asylum and for withholding of deportation.

The respondent maintains that he will be persecuted and harmed by leftist insurgents in El Salvador on account of his association with the Government of El Salvador. He testified that he was a member of the national police in El Salvador from 1967 to 1980 and a guard at the United States Embassy from 1980 until 1982. In both capacities, the respondent and his fellow officers were attacked by guerrillas on several occasions. In one incident, for example, while checking the highways, guerrillas assaulted his police group and killed one of his fellow officers. On another occasion, four guerrillas in an automobile machine-gunned the Embassy while he was standing guard. When the guerrillas returned for a second attack, they were captured.

The respondent further testified that many inhabitants of his hometown had joined the guerrillas and they were very active in that area. The guerrillas there knew him by name, knew he was a member of the police, and had threatened him personally while he was a member of the national police. He stated that the government was unable to protect him in El Salvador and he had fled to avoid being killed. The respondent additionally testified that two of his relatives, who had been "local commanders," had committed suicide because of their fear of the guerrillas.

In addition to his own testimony, the respondent presented two witnesses who had known him in El Salvador. They testified that the situation in his hometown was very dangerous; that it was an area of ongoing fighting between the military and the guerrillas; that the guerrillas there killed people for "having been" in the military; that the guerrillas knew of the respondent's past service; that he would be punished or "disappear" if he returned to his hometown even if he was no longer in service; and that the government could not protect him. One of the two witnesses also stated that the guerrillas had the names of the people who had been in the service and would immediately find out if the respondent returned to his hometown.

An alien who is seeking withholding of deportation from any country must show that his "life or freedom would be threatened

in such country on account of race, religion, nationality, membership in a particular social group, or political opinion." Section 243(h)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1253(h)(1) (1982). In order to make this showing, the alien must establish a "clear probability" of persecution on account of one of the enumerated grounds. *INS* v. *Stevic*, 467 U.S. 407 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution. *Id.* at 429–30.

In order to establish eligibility for a grant of asylum, an alien must demonstrate that he is unwilling or unable to return to his country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 208 of the Act, 8 U.S.C. § 1158 (1982). The Board previously took the position that, as a practical matter, the showing required to establish a well-founded fear of persecution for asylum purposes was the same as that required to establish a clear probability of persecution for purposes of withholding of deportation. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985). The Supreme Court has rejected this approach in *INS* v. *Cardoza-Fonseca*, 480 U.S. 421 (1987). In that case, the Court found it reasonable to assume that Congress intended to make it more difficult to establish absolute entitlement to withholding of deportation under section 243(h) than to establish mere eligibility for asylum under section 208 of the Act. *Id.* at 443–44. In *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987), the Board reexamined the burden of proof in asylum cases in light of the Supreme Court's holding. In that case, it was held that an applicant for asylum has established a well-founded fear if a reasonable person in his circumstances would fear persecution on account of one of the grounds specified in the Act. We noted that a reasonable person may fear persecution even where its likelihood is significantly less than clearly probable. In considering asylum claims, an alien's own testimony may be sufficient, without corroborative evidence, to prove a well-founded fear of persecution where that testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear.

Based upon our review of the record, we find that the respondent has failed to demonstrate his eligibility for asylum and, consequently, also has not satisfied the higher burden of proof necessary to establish eligibility for withholding of deportation.

There are two related, but distinct, bases underlying this respondent's asylum claim. The first is his fear arising from the events that occurred while he was a policeman and guard in El Sal-

vador prior to his departure in 1982. The second aspect of his claim is the fear that he will face persecution as a *former* national policeman if he returns to El Salvador.

We do not find that the respondent can demonstrate a well-founded fear of persecution "on account of" one of the grounds specified in the Act based on the events that occurred while he was a policeman and guard in El Salvador from 1967 to 1982. In so holding, we find that dangers faced by policemen as a result of that status alone are not ones faced on account of race, religion, nationality, membership in a particular social group, or political opinion.

There is presently a political struggle ongoing in El Salvador, the ultimate objective of which is supremacy of one side over the other. The guerrillas, whom the respondent fears, appear intent on overthrowing the government. The government's obvious intent is to thwart the guerrillas' objectives. Unfortunately, violence appears inherent to such revolutionary struggles. Guerrillas often engage in violence, not only against military targets, but also against civilian institutions that, whether intentionally or not, support domestic stability and the strength of the existing government. Policemen are by their very nature public servants who embody the authority of the state. As policemen around the world have found, they are often attacked either because they are (or are viewed as) extensions of the government's military forces or simply because they are highly visible embodiments of the power of the state. In such circumstances, the dangers the police face are no more related to their personal characteristics or political beliefs than are the dangers faced by military combatants. Such dangers are perils arising from the nature of their employment and domestic unrest rather than "on account of" immutable characteristics or beliefs within the scope of sections 101(a)(42)(A) or 243(h) of the Act, 8 U.S.C. §§ 1101(a)(42)(A) and 1253(h) (1982). Accordingly, we do not find that the respondent has demonstrated a well-founded fear of persecution "on account of" one of the grounds protected by the Act by virtue of the attacks and dangers he faced as a policeman and guard in El Salvador prior to his departure in 1982.

We note that if one were to find that a policeman or guerrilla was a victim of "persecution" within the scope of the Act based solely on the fact of an attack by one against the other, then it would follow that the attacker had participated in an act of "persecution" that would forever bar him or her from relief under sections 208(a) or 243(h). Such a "broad" interpretation of the concept of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion" would have the actual effect of greatly narrowing the group of persons eligible

for asylum and withholding. Virtually all participants on either side of an armed struggle could be characterized as "persecutors" and would thereby be ineligible for asylum or withholding of deportation. The concept of "persecution" has not been so broadly defined.

The second aspect of the respondent's claim is his fear arising from his status as a former member of the national police. This is in fact an immutable characteristic, as it is one beyond the capacity of the respondent to change. It is possible that mistreatment occurring because of such a status in appropriate circumstances could be found to be persecution on account of political opinion or membership in a particular social group. For example, where hostilities have ceased, an asylum applicant who is subject to mistreatment because of a past association may be able to demonstrate a well-founded fear of persecution on account of a ground protected by the Act. We note that an applicant does not bear the unreasonable burden of establishing the exact motivation of a "persecutor" where different reasons for actions are possible. However, an applicant does bear the burden of establishing facts on which a reasonable person would fear that the danger arises on account of his race, religion, nationality, membership in a particular social group, or political opinion. The Government may also introduce supporting or contradictory evidence regarding both the potential for mistreatment and the reasons therefor.

In this case, the facts surrounding the possible danger faced by the respondent if he returns to his hometown and, more specifically, the reasons for that danger are not clearly developed. Although the respondent testified that he fears harm if he returns to El Salvador, his testimony relates to events that occurred while he was an active member of the government forces prior to his departure from El Salvador. One of his witnesses stated that the respondent would face danger if he returned to his hometown but was unable to testify to any instances of individuals endangered for having been in the military service. The final witness, however, did testify that the guerrillas in the respondent's hometown knew of those "who served in the military" and the respondent would "disappear" if he returned. But this witness also testified that the town was in a situation of strife between the army and the guerrillas with "terrible" fighting ongoing.

On this record, we do not find that the respondent has adequately demonstrated a well-founded fear of "persecution" on account of his status as a former policeman; rather, the record would indicate a danger that one with ties to a participant in a violent struggle might expect if he ventures into an area of open conflict. We note

that participants in an ongoing armed struggle may well have reasons for refusing to tolerate the presence of "past" opponents in territories under their control or under dispute, unrelated to persecution on account of a protected status (*e.g.*, the most fundamental question of whether or not such individuals are in fact no longer taking part in the hostilities either overtly or covertly).

Even if one assumes the respondent's claim in this respect has been otherwise demonstrated, however, we do not find an asylum claim based on nongovernmental action adequately established where the evidence the respondent presents is directed to so local an area of his country of nationality. Although the respondent expressed a general fear of returning to El Salvador, his specific evidence focuses on the danger he would face if he returned to his hometown, where he is known by guerrillas and the conflict is still ongoing. The record in fact indicates that the respondent resided in San Salvador for 2 years prior to his departure from El Salvador and only visited his mother on weekends at his hometown when he had permission.

Because we do not find that the respondent has demonstrated his eligibility for the requested relief from deportation, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977), the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.