

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2008

# Arca-Pineda v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 07-1914

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Arca-Pineda v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1086.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1086

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 07-1914

_____

NORMA ISABEL ARCA-PINEDA,
*Petitioner*,

v.

ATTORNEY GENERAL OF THE UNITED STATES
*Respondent.*

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A27-624-199
Immigration Judge: Henry S. Dogin

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
May 15, 2008

_____

Before: McKee and Garth, *Circuit Judges*, and RODRIGUEZ,
*District Judge**
(Opinion Filed: May 28, 2008)

Marcia S. Kasdan, Esq.
Law Office of Marcia Kasdan
127 Main Street
Hackensack, New Jersey 07601

_____

*The Honorable Joseph H. Rodriguez, Senior District Judge for the District of New Jersey, sitting by designation.

*Attorney for Petitioner*

Peter D. Keisler, Assistant Attorney General
Richard M. Evans, Assistant Director
Andrew Oliveira, Trial Attorney (On Brief)
Office of Immigration Litigation
U.S. Department of Justice
Civil Division
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
  *Attorneys for Respondent*

_____

**OPINION**

_____

GARTH, *Circuit Judge*

Norma Isabel Arca-Pineda ("Petitioner") petitions for review of an order of the Board of Immigration Appeals ("BIA"), which affirmed an order of an Immigration Judge ("IJ"), finding her removable and denying her application for suspension of deportation. For the following reasons, the petition will be denied.

I.

On November 26, 1986, Petitioner, a native and citizen of Peru, entered the United States without inspection. That same day, immigration officials served her with an order to show cause charging her as removable under former Section 241 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2) (repealed 1986) (entrance without inspection). When Petitioner failed to appear at her deportation hearing on March 23, 1987, the order to show cause was returned to the Immigration and Naturalization Service ("INS") for appropriate action. Petitioner's deportation proceeding was then administratively closed.

On August 11, 2001, Petitioner filed a motion to re-calendar her case to allow her to apply for adjustment of status. The INS denied her application for adjustment of status on July 18, 2002,

because she failed to appear for her interview. On April 28, 2005, Petitioner submitted an application for suspension of deportation under former Section 244 of the INA, 8 U.S.C. § 1254 (repealed 1996).

On July 18, 2005, the IJ denied Petitioner's request for suspension of deportation and ordered her deported to Peru. The IJ held that the "stop-time" rule under Section 240A of the INA, 8 U.S.C. § 1229b(d)(1), applied to her case. As a result, the IJ held that Petitioner accrued zero years of continuous physical presence in the United States because she was served with an order to show cause on the same day she entered the country. Because Petitioner lacked the requisite seven years of continuous physical presence for suspensions of deportation, the IJ denied her application.

Petitioner then appealed the IJ's decision to the BIA. She argued that her continuous physical presence clock restarted when her deportation proceeding was administratively closed on March 23, 1987. Petitioner claimed that she then accrued the requisite seven years of continuous physical presence in the United States. On February 28, 2007, the BIA issued a decision adopting and affirming the IJ's decision, and thus rejected her claim of eligibility for suspension of deportation. The BIA held that Petitioner's deportation proceedings did not "restart" when they were administratively closed. Instead, the BIA held, Petitioner was subject to one continuous immigration proceeding which began on the date she entered the United States. The instant petition for review followed.

## II.

We have jurisdiction to review legal and constitutional questions concerning Petitioner's eligibility for suspension of deportation. See 8 U.S.C. § 1252(a)(2)(D). Because the BIA adopted and affirmed the IJ's decision, and also made its own findings, we review the decisions of both the BIA and the IJ. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review legal questions *de novo*, but "defer to the BIA's reasonable interpretations of statutes it is charged with administering." Silva-Rengifo v. Att'y Gen. of the U.S., 473 F.3d 58, 63 (3d Cir. 2007) (citing INS v. Aguirre-Aquirre, 526 U.S. 415, 424 (1999)); see also

Partyka v. Att'y Gen. of the U.S., 417 F.3d 408, 411 (3d Cir. 2005).

### III.

Petitioner argues that she is eligible for suspension of deportation under former 8 U.S.C. § 1254(a)(1). Under this section, an alien was eligible for suspension of deportation upon showing, *inter alia*, that she had been "physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application." 8 U.S.C. § 1254(a)(1) (repealed 1996). The enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, made numerous changes affecting the availability of suspensions of deportation. One of those changes was the "stop-time" rule under Section 240A(d)(1) of the INA, 8 U.S.C. § 1229b(d)(1). Under this rule, the count of time towards satisfying the seven year continuous physical presence requirement stops upon the service of a notice to appear placing the alien into removal proceedings under the INA. See 8 U.S.C. § 1229b(d)(1).[1]

Petitioner raises two arguments to support her claim of eligibility for suspension of deportation. First, she argues that she accrued more than seven years of continuous physical presence in the United States. She reaches this conclusion by maintaining that her deportation proceedings ended when they were administratively closed on March 23, 1987, whereupon she accrued over fourteen years of continuous physical presence until she filed her motion to reopen on August 11, 2001, which restarted her removal proceedings.

Second, she argues that the BIA's application of the stop-time rule was "arbitrary and inequitable." (Br. at 13.) Specifically, Petitioner relies on our decision in Okeke v. Gonzales, 407 F.3d 585 (3d Cir. 2005), which held that lawful reentry into the United States after a clock-stopping event allows the alien's continuous

---

[1]Although the stop-time rule applied only to notices to appear, Congress later passed the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105-100, 111 Stat. 2160 (1997), which clarified that the stop-time rule also applied to orders to show cause.

physical presence clock to restart. Petitioner argues that application of Okeke to her case shows the fallacy of the BIA's ruling. She claims that if she had left the United States in, say, 1989, and later sought reentry, her continuous physical presence clock would have restarted and she would have accumulated seven years of presence. She argues that this result violates the equal protection component of the Due Process Clause of the Fifth Amendment because it treats differently those aliens who have left and reentered the country, and those who have not. We will address each of these arguments separately.

A.

Petitioner claims that her continuous physical presence clock restarted after the administrative termination of her case on March 23, 1987 and that she then began accruing over fourteen years of continuous physical presence until August 11, 2001, the date she filed her motion to re-calendar. We disagree. Petitioner's immigration proceeding did not terminate upon administrative closure. As noted by the First Circuit Court of Appeals, "[a]dministrative closure is a procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order." Lopes-Reyes v. Gonzales, 496 F.3d 20, 21 (1st Cir. 2007) (citing In re Lopez-Barrios, 20 I. & N. Dec. 203, 204 (BIA 1990); In re Amico, 19 I. & N. Dec. 652, 654 n.1 (BIA 1988)). "Rather, administrative closure of a case temporarily removes a case from an immigration judge's calendar or from the Board's docket." Id. (citing Mickeviciute v. INS, 327 F.3d 1159, 1161 n.1 (10th Cir. 2003); Amico, 19 I. & N. Dec. at 654 n.1). Since Petitioner's immigration proceedings did not end upon administrative closure, and instead her proceedings were merely removed from the IJ's calendar, her continuous physical presence clock did not begin anew. Therefore, Petitioner's claim that she began accruing continuous physical presence after the administrative closure of her case must be rejected.

B.

Petitioner next argues that application of the stop-time rule to her case is inequitable, and violates our Circuit's precedent, because it creates the following result: aliens who leave the United States and then lawfully reenter have their continuous physical

presence clock restarted, while aliens, such as her, who never leave the United States do not have their physical presence clock restarted. Petitioner argues that this result is prohibited under our Circuit's decision in Caroleo v. Gonzales, 476 F.3d 158 (3d Cir. 2007).

In Caroleo, we analyzed the "statutory counterpart" requirement for applications for waivers of removal by certain deportable aliens under former Section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed 1996). We noted that, under the literal terms of the statute, Section 212(c) relief was only available to aliens who left the United States and are then faced with exclusion (i.e., inadmissibility) under Section 212(a) of the INA, 8 U.S.C. § 1182(a). Caroleo, 476 F.3d at 164 n.3. We further noted that the INS later extended Section 212(c) relief to aliens who had left the United States and were permitted to reenter despite being excludable. Id. As we stated, "[t]his practice yielded an inequitable result by treating differently, removable aliens who had left and reentered the United States and those who had never left." Id. We then adopted the Second Circuit's holding that "this distinction was 'not rationally related to any legitimate purpose of the statute'" and therefore violated the equal protection component of the Due Process Clause of the Fifth Amendment. Id. (quoting Francis v. INS, 532 F.2d 268, 272 (2d Cir. 1976)).

Petitioner argues that the reasoning of Caroleo applies to her case. She contends that had she simply left the United States and reentered seven or more years before August 11, 2001, she would have restarted her physical presence clock and thereby accrued the seven years of continuous physical presence necessary for a suspension of deportation. Petitioner contends this result violates the reasoning of Caroleo. Although Petitioner does not explicitly state so in her brief, we construe this argument as claiming a violation of her equal protection rights.

We have held that "disparate treatment of different groups of aliens triggers only rational basis review under equal protection doctrine." DeSousa v. Reno, 190 F.3d 175, 184 (3d Cir. 1999). In DeSousa, we described rational basis review as follows:

> Under this minimal standard of review, a classification is accorded a strong presumption of

validity and the government has no obligation to produce evidence to sustain its rationality. Indeed, such a classification can be upheld as constitutional even when it is based on rational speculation rather than on empirical data. Once a facially legitimate reason for the classification is found, whether such a reason was articulated by Congress or not, we must rule the classification constitutional. As always, when performing such review, our role is not to judge the wisdom or fairness of Congress's policy choices, but rather their constitutionality.

Id. (internal citations and quotations omitted); see also Appiah v. INS, 202 F.3d 704, 709-10 (4th Cir. 2000) (applying rational basis review to an equal protection challenge to the stop-time rule).

The distinction drawn here, between those aliens who lawfully reenter the country and those who do not, clearly passes muster under rational basis review. As noted by the Fourth Circuit Court of Appeals, "Congress enacted the [stop-time] rule to remove an alien's incentive for prolonging deportation proceedings in order to become eligible for suspension." Appiah, 202 F.3d at 710. The House Report accompanying the legislation supports this proposition, stating that Congress enacted the stop-time rule because "[s]uspension of deportation is often abused by aliens seeking to delay the proceedings until 7 years have accrued." See H.R. Rep. No. 104-469(I) (1996). Other courts have agreed that the stop-time rule was enacted to combat efforts by aliens to intentionally delay their immigration proceedings to enable them to apply for suspension of deportation. See De La Cruz v. Mauer, 483 F.3d 1013, 1021 (10th Cir. 2007); Appiah, 202 F.3d at 710.

The distinction here furthers this legislative purpose. While the Government does not contend that Petitioner intentionally delayed her immigration proceedings, it appears that the same concerns that fostered Congress's enactment of the stop-time rule apply here. The record shows that Petitioner failed to appear at her deportation hearing in 1987[2], which resulted in her immigration

---

[2]As noted, Petitioner also failed to appear on July 18, 2002 when she moved to re-calendar her case.

proceedings being administratively terminated. Petitioner is now attempting to capitalize upon this situation by claiming that the administrative closure restarted her continuous physical presence clock, thereby allowing her to accumulate seven years of continuous physical presence. Allowing Petitioner to apply for suspension of deportation here would essentially permit her to benefit from her failure to attend a deportation proceeding. This would clearly frustrate Congress' purpose for enacting the stop-time rule.

This fact also makes Petitioner's situation different from that faced in Caroleo. In Caroleo, we agreed with the Second Circuit that there was no legitimate purpose for the distinction at issue there. Caroleo, 476 F.3d at 163 n.3. In the instant matter, however, the distinction is effective. By not appearing at her immigration hearing and remaining in the United States, Petitioner is seeking to benefit from the delays in her immigration case to argue that she satisfied the seven year presence requirement. On the other hand, an alien who leaves the country and lawfully reenters causes no delay in her case. Instead, once an alien reenters the country, her continuous physical presence clock starts anew and she must stay in this country for another seven years to be eligible for suspension of deportation. See Okeke, 407 F.3d at 591. Therefore, the distinction at issue here is rationally related to the purpose of the stop-time rule.

## C.

Although not raised by the Government, Petitioner is ineligible for suspension of deportation for another reason. Section 1254(a)(1) requires that an alien seeking suspension of deportation be "physically present in the United States for a continuous period of not less than seven years *immediately proceeding* the date of such application...." 8 U.S.C. § 1254(a)(1) (1996) (emphasis added). Here, Petitioner is attempting to rely on the fourteen years of presence between 1987 and 2001 to argue that she meets the physical presence requirement. This period of time, however, did not "immediately proceed" her application for suspension of deportation. The record indicates that Petitioner applied for suspension of deportation on April 28, 2005, which was nearly four years after her period of continuous physical presence. For this

additional reason, Petitioner is ineligible for suspension of deportation.

## IV.

Petitioner also argues that retroactively applying the stop-time rule to her case violates her Due Process rights. We have already rejected this challenge, however, in a previous decision. Pinho v. INS, 249 F.3d 183, 188 (3d Cir. 2001) (holding that "[t]he plain meaning of these statutes establishes Congress's intent to apply the stop-time rule to all cases, including those pending as of [the date of the enactment of IIRIRA]"). Furthermore, we rejected in Pinho the same due process challenge that Petitioner raises. Id. at 189 (holding that because "[s]uspension of deportation is prospective relief it does not impair any vested rights" and therefore "no potential violation of due process exists") (citations omitted). Accordingly, Petitioner is not entitled to relief on this ground.

## V.

For the foregoing reasons, we will deny the petition for review.