**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1130
_____

ROBERT RAMIREZ-OLORTIGUE,
                                                            Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                                            Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A075-547-292)
Immigration Judge:  Honorable Eugene Pugliese
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 24, 2013
Before:  VANASKIE, COWEN and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 25, 2013)
_____

OPINION
_____

PER CURIAM

Robert Ramirez-Olortigue petitions for review of a final order of the Board of

Immigration Appeals (BIA) affirming the decision of the Immigration Judge (IJ) denying

his application for cancellation of removal.  We will deny the petition for review.

Ramirez-Olortigue is a citizen of Peru.  He arrived in the United States in 1995; on

January 30, 1998, the former Immigration and Naturalization Service (INS) served him with a notice to appear, charging that he was removable under section 212(a)(6)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien who was present in the United States without being admitted.

On August 13, 1998, Ramirez-Olortigue appeared before an IJ. During that hearing, the government and Ramirez-Olortigue's counsel agreed to remand the case to the INS's District Director to consider whether Ramirez-Olortigue should be granted permanent-resident status based on his marriage to a United States citizen. The IJ therefore entered an order remanding the case; the order provided that "if the action taken by the District Director is favorable to [Ramirez-Olortigue], the pending deportation proceedings shall be terminated; but . . . if the action taken by the District Director is not favorable to [Ramirez-Olortigue] the pending deportation proceedings shall remain in full force and effect."

After the case was remanded, Ramirez-Olortigue separated from his then-wife, and consequently abandoned his adjustment-of-status application. The INS then filed a motion to re-calendar the case before the IJ, which was granted. Ramirez-Olortigue did not appear at the rescheduled hearing, and the IJ ordered him removed in absentia.

In 2007, Ramirez-Olortigue sought to reopen his proceedings. He claimed that he did not receive the INS's motion to re-calendar, and explained that he did not believe that he had been required to provide change-of-address information to the Immigration Court because, to his mind, his proceedings had been conclusively terminated when the IJ remanded the action in 1998. The IJ denied the motion to reopen, but the BIA reversed,

2

concluding that Ramirez-Olortigue's mistake about his obligations was reasonable and that he should be given the opportunity to have an IJ consider the merits of his defenses to removability.

In September 2008, Ramirez-Olortigue appeared before the IJ in his reopened action. After proceedings not relevant here, Ramirez-Olortigue conceded removability but sought cancellation of removal under 8 U.S.C. § 1229b(b)(1), which permits the Attorney General to cancel the removal of an alien who, in addition to meeting other requirements, "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." The IJ rejected the application on the ground that the continuous-residence period ends when an alien is served with a notice to appear, and Ramirez-Olortigue was served with such a notice less than three years after he arrived. See 8 U.S.C. § 1229b(d). The BIA affirmed, and Ramirez-Olortigue then filed a timely petition for review to this Court.

We have jurisdiction pursuant to 8 U.S.C. § 1252. In reviewing Ramirez-Olortigue's request for cancellation of removal, we may consider constitutional claims and questions of law, but not factual or discretionary determinations. Pareja v. Att'y Gen., 615 F.3d 180, 186 (3d Cir. 2010). We review legal questions de novo, but "defer to the BIA's reasonable interpretations of statutes it is charged with administering." Arca-Pineda v. Att'y Gen., 527 F.3d 101, 103 (3d Cir. 2008). Because the BIA issued its own opinion, we review its decision rather than the IJ's. Roye v. Att'y Gen., 693 F.3d 333, 339 (3d Cir. 2012).

We discern no error in the BIA's decision. As the BIA noted, to be eligible for

3

cancellation of removal, the alien must meet the ten-year continuous-presence requirement; moreover, under the so-called "stop-time rule," the count of time toward the ten-year requirement stops upon service of a notice to appear. See 8 U.S.C. § 1229b(b)(1), (d). There is no dispute that Ramirez-Olortigue was served with a notice to appear less than three years after arriving in the United States. See generally Briseno-Flores v. Att'y Gen., 492 F.3d 226, 231 (3d Cir. 2007).

While Ramirez-Olortigue acknowledges that he was served with a notice to appear before he had resided in the United States for ten years, he argues that an exception to the stop-time rule is available here. In support of this argument, he relies on In re Cisneros-Gonzalez, 23 I. & N. Dec. 668, 672 (BIA 2004), where the BIA held that the notice to appear referred to in the stop-time rule "pertains only to the charging document served in the proceedings in which the alien applies for cancellation of removal, and not to charging documents served on the alien in prior proceedings." Ramirez-Olortigue contends that in his case, the initial notice to appear was dismissed, and that he has continuously resided in the United States for ten years since that dismissal.

Ramirez-Olortigue's argument lacks merit. Even assuming that the continuous-presence clock can restart after a notice to appear has been finally dismissed — an issue on which we express no position here — we have squarely held that the clock does not restart after a mere "administrative closure." See Arca-Pineda, 527 F.3d at 104-05. As we explained in Arca-Pineda, administrative closure is a "procedural convenience that may be granted if both parties to the removal proceedings agree, but it does not constitute a final order"; rather, administrative closure merely "temporarily removes a case from the

4

immigration judge's calendar." Id. (internal quotation marks omitted).

Here, rather than being finally terminated, the proceedings in Ramirez-Olortigue's case were administratively closed. As noted above, based on agreement between Ramirez-Olortigue's counsel and the government, Ramirez-Olortigue's case was removed from the IJ's calendar so that he could pursue relief based on his marriage to a United States citizen. The IJ's order specifically stated that the order was not final, explaining that "if the action taken by the District Director is not favorable to [Ramirez-Olortigue] the pending deportation proceedings shall remain in full force and effect." Then, after Ramirez-Olortigue abandoned his application for permanent residence, the government re-calendared the initial action — just as provided for in the order — rather than initiating a new case. Therefore, Ramirez-Olortigue's action was administratively closed, not dismissed, and Arca-Pineda forecloses his argument. See generally In re Avetisyan, 25 I. & N. Dec. 688, 696 (BIA 2012) (noting that it is appropriate for IJs to use administrative closure in similar situation). We thus agree with the BIA that Ramirez-Olortigue cannot satisfy the continuous-residence requirement, which renders him ineligible for cancellation of removal.

Accordingly, we will deny Ramirez-Olortigue's petition for review.