NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2340
_____

MICHAEL ANTHONY HO-SUE,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,
                                        Respondent
_____

On Petition for Review of an Order of the Board of Immigration Appeals
(Agency No. A079-616-884)
Immigration Judge: Walter A. Durling
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 16, 2018
_____

Before: GREENAWAY, JR., RENDELL, and FUENTES, *Circuit Judges*.

(Opinion Filed: June 27, 2018)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Michael Ho-Sue petitions for review of a final order of the Board of Immigration Appeals ("BIA") denying his applications for discretionary cancellation of removal under 8 U.S.C. § 1229b(a) and deferral of removal under the Convention Against Torture ("CAT"). But because Ho-Sue is removable as an alien convicted of a controlled substance offense, our jurisdiction is limited to constitutional claims and questions of law. *See* 8 U.S.C. § 1252(a)(2)(C)–(D). To the extent that Ho-Sue raises constitutional or legal issues, his arguments lack merit. We will accordingly deny his petition for review.

## I. BACKGROUND

Ho-Sue is a citizen of Jamaica who first arrived in the United States in 2000 and eventually became a legal permanent resident. In 2011, he was convicted in Pennsylvania on charges of conspiracy and possession with intent to deliver marijuana. *See* 18 Pa. Cons. Stat. § 903(a)(1) (2018); 35 Pa. Stat. and Cons. Stat. Ann. § 780-113(a)(30) (West 2018). He was sentenced to nine months to five years in prison and was ultimately credited for time served of 1,478 days. As a result of the convictions, removal proceedings were initiated in 2013, and an Immigration Judge ("IJ") ultimately found that Ho-Sue was removable as both an alien convicted of a controlled substance offense, and as an alien convicted of an aggravated felony. *See* 8 U.S.C. § 1227(a)(2)(A)(iii), 1227(a)(2)(B)(i).

Ho-Sue subsequently filed an application for deferral of removal under the CAT.

2

In support of the application, Ho-Sue stated that he had been threatened by lottery scammers in Jamaica after one of his ex-girlfriends, Lisa Parvaiz, had stolen $25,000 from them. According to Ho-Sue, the police in Jamaica were paid off by the scammers and deliberately avoided arresting the group's leaders. Ho-Sue blamed the scammers for the 2008 shooting death of his cousin, and he claimed that someone had approached his mother when she was in Jamaica to say that her son would be killed if he ever returned to Jamaica. Ho-Sue said that he believed these threats to be credible and that he feared his life would be in danger if he ever went back.

The IJ found Ho-Sue's testimony credible, but nonetheless denied the CAT application. The IJ reasoned that Ho-Sue had not established how his cousin's killing had anything to do with him. More importantly, despite the threats Ho-Sue had apparently received, he had returned to Jamaica for his cousin's funeral and suffered no harm. The IJ also concluded that Ho-Sue had failed to establish that the Jamaican authorities would acquiesce or willfully turn a blind eye to any non-governmental actors that might subject him to violence. To the contrary, there was evidence that Jamaican authorities had actively attempted to combat lottery scammers. Thus, Ho-Sue had not met his burden of showing that it was more likely than not that he would be tortured with the acquiescence of the Jamaican government.

Following the denial of Ho-Sue's CAT application, the IJ dismissed the aggravated felony ground for removal, which made Ho-Sue eligible for discretionary cancellation of removal under 8 U.S.C. § 1229b(a). Ho-Sue filed a cancellation

3

application within weeks, and the IJ conducted a hearing, at which both Ho-Sue and his wife, Shamika, testified. During his testimony, Ho-Sue acknowledged his convictions but maintained his innocence, claiming that witnesses had lied about him at his trial. Shamika, whom Ho-Sue had recently married while serving his prison sentence for the marijuana convictions, testified that she had known Ho-Sue for twelve years and that their relationship had produced a now nine-year-old son. Shamika added that she had five other children from a previous relationship, all of whom loved Ho-Sue and considered him their father. She further testified that Pervaiz had contacted her on multiple occasions threatening to kill Ho-Sue if he ever returned to Jamaica. Out of fear of Pervaiz, Shamika said that she and her children would not follow Ho-Sue to Jamaica if he was removed there.

The IJ decided to grant Ho-Sue's application. While acknowledging the lack of corroborating evidence, the IJ found both Ho-Sue and Shamika to be credible. Although the IJ expressly refused to condone Ho-Sue's criminal record, he ultimately concluded that Ho-Sue's role as a father figure to six children warranted discretionary relief.

The BIA disagreed, however. Considering both the denial of the CAT application and the grant of the discretionary cancellation application, the Board concluded that Ho-Sue was entitled to neither form of relief. With respect to the cancellation application, the BIA gave less weight to Ho-Sue's family ties, explaining that Ho-Sue's contact with and support for his step-children must necessarily have been limited due to his extended time in prison. The Board then gave more weight to Ho-Sue's criminal record, stressing

4

that Ho-Sue still had not accepted responsibility for his crimes but instead maintained his innocence—despite the fact that five pounds of marijuana were found in his bedroom and eighty-seven pounds were found in a car parked in his driveway. "Given the nature and seriousness of the . . . crime, and [Ho-Sue's] unwillingness to accept responsibility for his actions," the Board concluded that he had "not demonstrated any meaningful rehabilitative potential" that would justify cancellation of removal as a matter of discretion. A.R. 5. It therefore reversed the IJ's order.

Regarding the CAT application, the BIA agreed with the IJ that Ho-Sue's connection to his cousin's killing was speculative and that his return to Jamaica for the funeral cast doubt on the validity of the scammers' threats. It also agreed that evidence showed that Jamaican authorities investigate and attempt to combat lottery scamming. Thus, Ho-Sue could not meet his burden under the Convention. The BIA accordingly sustained the IJ's CAT decision and reinstated the order of removal. Ho-Sue then filed a petition for review with this Court.

## II. JURISDICTION & STANDARD OF REVIEW

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3), and we have jurisdiction under 8 U.S.C. § 1252(a)(1). Because Ho-Sue is removable by virtue of a controlled substance conviction, our jurisdiction is limited to constitutional claims and questions of law.[1] 8 U.S.C. § 1252(a)(2)(C)–(D). We review such issues de novo. *Guzman v. Att'y*

---

[1] To the extent that Ho-Sue is challenging the BIA's denial of his application for cancellation of removal, our jurisdiction is limited to constitutional and legal questions by

*Gen.*, 770 F.3d 1077, 1082 (3d Cir. 2014).

## III. DISCUSSION

**A.      Discretionary Cancellation of Removal Under 8 U.S.C. § 1229b(a)**

In challenging the BIA's denial of his cancellation application, Ho-Sue appears to make two different legal arguments, both of which focus on the evidence that the BIA relied upon in reversing the IJ.  First, he contends that the BIA committed legal error by considering facts that led to his arrest but not to his ultimate conviction.  Second, he argues that the Board engaged in impermissible factfinding by citing an affidavit of probable cause that had not been expressly mentioned in the IJ's written decision.

With regard to the first argument, Ho-Sue contends that the BIA should not have considered the eighty-seven pounds of marijuana that were found in the car parked in his driveway because, at his criminal trial, the jury was unable to reach a verdict on the charge of possession of marijuana in an automobile and a mistrial was declared on that count.

The legal authority underlying this contention is unclear, however.  Ho-Sue frames his argument as a due process claim, but we have held that aliens have no due process liberty interest in being considered for discretionary relief because such relief is "a matter of grace rather than of right."  *See United States v. Torres*, 383 F.3d 92, 104–06 (3d Cir. 2004).  The traditional rules of evidence are also inapplicable in immigration

---

an additional provision: 8 U.S.C. § 1252(a)(2)(B)(i), which bars review of the agency's discretionary determinations under 8 U.S.C. § 1229b.

6

proceedings, and "arrest reports historically have been admissible in such proceedings." *Henry v. INS*, 74 F.3d 1, 6 (1st Cir. 1996). Indeed, "there is no per se bar to the agency's consideration of hearsay-laden police reports where convictions have not followed." *Arias-Minaya v. Holder*, 779 F.3d 49, 54–55 (1st Cir. 2015) (citing *Paredes-Urrestarazu v. INS*, 36 F.3d 801, 810 (9th Cir. 1994); *Parcham v. INS*, 769 F.2d 1001, 1005 (4th Cir. 1985)). And "in the context of determining whether an alien warrants discretionary relief from removal, the fact of an arrest and its attendant circumstances . . . may have probative value in assessing his character (and, thus, his suitability for discretionary relief)." *Id.* at 54.

To the extent there are—despite the lack of cognizable constitutional protection—any limits on the BIA's ability to consider the circumstances surrounding Ho-Sue's arrest, we think they are inapplicable here. Ho-Sue has failed to explain how the evidence the BIA considered is in any way unreliable. To the contrary, Ho-Sue's criminal defense counsel signed a stipulation of facts acknowledging that the eighty-seven pounds of marijuana were in fact found in the car parked in Ho-Sue's driveway. Accordingly, we see no basis to conclude that the BIA somehow committed legal error by considering that drug quantity in determining whether Ho-Sue was entitled to discretionary relief—despite the fact that no conviction resulted. To the extent Ho-Sue takes issue with the weight that the BIA gave this particular evidence, we are without jurisdiction to review that discretionary determination. *See Cospito v. Att'y Gen.*, 539 F.3d 166, 170–71 (3d Cir. 2008).

Ho-Sue next argues that the BIA erred by referencing an affidavit of probable cause that had not been expressly mentioned in the IJ's written decision. It is true that the BIA may not "engage in factfinding in the course of deciding appeals," 8 C.F.R. § 1003.1(d)(3)(iv), but the BIA did not do so here. In its written decision, the IJ had already acknowledged that Ho-Sue's criminal record was a relevant consideration, and it had observed that the eighty-seven pounds of marijuana had been found in the car outside of his home, in addition to the roughly five pounds found in his bedroom. The BIA subsequently repeated these facts in its opinion, and then added in a footnote that "[a]n affidavit of probable cause contained in the conviction records states that [Ho-Sue] was involved in the trafficking of large quantities of marijuana and an associate made multiple trips on behalf of the respondent to pick up as much as 200 pounds of marijuana at a time." A.R. 5. Importantly, the "conviction records" to which the BIA referred were the same records that were submitted to the IJ when it was considering Ho-Sue's application. Indeed, the affidavit of probable cause was a part of the same exhibit that the IJ cited when it referenced the various drug quantities.

Thus, in essence, the IJ made a factual finding regarding Ho-Sue's criminal record based on the documentary evidence before it, and it summarized that evidence in its written decision. The BIA then looked at the same evidence and mentioned a particular piece of information that the IJ did not reference in its summary of the evidence. We do not think the prohibition on factfinding bars the BIA from employing such reasoning when it weighs the various considerations. In fact, when it reverses the IJ, "[t]he BIA

8

must show that it reviewed the record and considered the evidence upon which the IJ relied, and it must explain why the record warrants a different conclusion than the one reached by the IJ." *Huang v. Att'y Gen.*, 620 F.3d 372, 387 (3d Cir. 2010). In other words, the factfinding bar must provide the BIA some room to explain itself when it disagrees with the IJ. Here, the IJ had already observed that Ho-Sue's criminal record was a relevant factor, and the BIA merely cited documentary evidence that was in the record and available to the IJ during its initial review. Under these circumstances, we are unpersuaded that the BIA engaged in impermissible factfinding. Accordingly, we will deny Ho-Sue's petition for review of the BIA's order denying his application for discretionary cancellation of removal.

**B.      Deferral of Removal under the CAT**

In assessing Ho-Sue's CAT claim, we review both the BIA's and the IJ's decisions to the extent that the BIA relied upon the IJ's findings in its decision. *See Guzman*, 770 F.3d at 1082 ("Where 'the BIA adopts and affirms the decision of the IJ, as well as provides its own reasoning,' we review both the IJ's and BIA's decisions.") (quoting *Hashmi v. Att'y Gen.*, 531 F.3d 256, 259 (3d Cir. 2008)). To be eligible for relief under the CAT, Ho-Sue must establish that he would more likely than not be subject to torture if removed to Jamaica. 8 C.F.R. § 1208.16(c)(2). "For an act to constitute torture under the [CAT] and the implementing regulations, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for an illicit or proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a

9

public official who has custody or physical control of the victim; and (5) not arising from lawful sanctions." *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (alteration in original) (quoting *Auguste v. Ridge*, 395 F.3d 123, 151 (3d Cir. 2005)).

Ho-Sue argues that the BIA and the IJ erred in concluding that he failed to establish that the Jamaican government would acquiesce to any harm he would suffer. He contends that both the BIA's and the IJ's decisions were grounded in the proposition that the Jamaican government could not be acquiescent because it takes measures to combat lottery scamming. This premise, Ho-Sue contends, is inconsistent with *Pieschacon-Villegas v. Attorney General*, 671 F.3d 303, 312 (3d Cir. 2011), in which we held that "an applicant can establish governmental acquiescence even if the government opposes the . . . organization that is engaged in torturous acts." *See also Gomez-Zuluaga v. Att'y Gen.*, 527 F.3d 330, 351 (3d Cir. 2008) ("The mere fact that the . . . government is engaged in a protracted civil war with the [alleged torturers] does not necessarily mean that it cannot remain willfully blind to [their] torturous acts . . . .").

Ho-Sue's argument fails for two reasons. First, in concluding that Ho-Sue had failed to meet his burden on the acquiescence question, neither the BIA nor the IJ relied solely on the fact that the Jamaican government opposes lottery scammers. Instead, they each acknowledged that Ho-Sue had presented evidence of police corruption, but ultimately concluded that Ho-Sue's evidence was nonetheless insufficient to prove that the government would be acquiescent or willfully blind. Importantly, neither the BIA nor the IJ made the kind of "unqualified statement[]" that we found problematic in

10

*Pieschacon-Villegas*, 671 F.3d at 311. They did not say or suggest that an applicant could *never* prove acquiescence or willful blindness when a government takes measures to combat alleged tortures. They simply evaluated all of the relevant evidence and concluded that Ho-Sue could not meet his burden.

Second, even if Ho-Sue could meet his burden on the acquiescence issue, both the BIA and the IJ concluded in the alternative that Ho-Sue failed to establish that it was more likely than not that he would, if removed, suffer harm rising to the level of torture—that is, an act causing severe physical or mental pain or suffering, *see Myrie*, 855 F.3d at 515. Indeed, both the BIA and the IJ reasoned that Ho-Sue's connection to his cousin's killing was speculative and that Ho-Sue had been able to return to Jamaica without being hurt. Accordingly, even if the BIA and IJ had committed legal error on the acquiescence question, Ho-Sue still would not be eligible for relief under the CAT.

## IV. CONCLUSION

For the foregoing reasons, we will deny Ho-Sue's petition for review.