**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1713
_____

HECTOR HERBERT HENDERSON,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A209-307-955)
Immigration Judge:  John B. Carle

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 19, 2019

Before:  MCKEE, COWEN, and ROTH, Circuit Judges

(Opinion filed: October 30, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Hector Herbert Henderson, proceeding pro se, petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for withholding of removal and protection under the Convention Against Torture (CAT).  For the reasons that follow, we will dismiss the petition in part and deny it in part.

I.

Henderson is a citizen of Jamaica who entered the United States in 1989 on a visitor's visa[1] and has remained since.  In 2015, he was convicted of possession with intent to deliver cocaine, in violation of 35 P.S. § 780-113(a)(30).  In April 2017, Henderson was ordered removed as an aggravated felon pursuant to 8 U.S.C. § 1228(b).  Henderson subsequently expressed a fear of return to Jamaica, and he was referred to withholding-only proceedings pursuant to 8 C.F.R. § 1208.31(e).

At the merits hearing, Henderson testified that he worked as a policeman in Jamaica from 1979 to 1984, while the People's National Party (PNP) was in power.  Henderson worked as part of the security team for Michael Henry, a politician affiliated with the Jamaican Labor Party (JLP).  Based on Henderson's police work and his affiliation with the JLP, he was threatened by the "Clansmen" and other members of the PNP.  In 1980, Henderson's partner was shot and killed in a shootout with the Clansmen.

---

[1] The parties appear to dispute whether the visa was fraudulent.  We need not resolve that issue in order to adjudicate this appeal.

In 1984, Henderson was ambushed by four Clansmen and was shot. The shooters in both incidents were eventually apprehended or killed by Jamaican authorities.

Because he feared the Clansmen, Henderson left the police force and lived in hiding in Ocho Rios for five years before coming to the United States in 1989. Henderson fears that if he returns to Jamaica he will be targeted and killed by the Clansmen. Although the PNP is no longer the political party in power, Henderson testified that he believes the JLP-led government will be unable to protect him from the Clansmen.

The Immigration Judge (IJ) determined that Henderson was credible, but nonetheless denied relief. The IJ found that Henderson was ineligible for withholding of removal based on his conviction for unlawful trafficking of controlled substances, which presumptively constitutes a particularly serious crime. Henderson did not dispute that his conviction constitutes a particularly serious crime.

With respect to Henderson's CAT claim, the IJ determined that his fear was based on "stringing together a series of suppositions,"[2] which was insufficient to show that it was more likely than not that Henderson would suffer torture "at the hands of anyone, let alone with the government's acquiescence." IJ Op. at 13, 14. The IJ emphasized that

---

[2] Specifically, Henderson maintained that if he is deported, his name will be added to a list; that the list would be given to police, who would in turn give it to the Clansmen; that the Clansmen would be interested in harming Henderson; and that the Clansmen would successfully locate Henderson, at which point they would torture or kill him.

3

Henderson had safely lived in Ocho Rios for several years without suffering harm, and that Henderson did not indicate that the PNP or the Clansmen expressed any interest in him while he has resided in the United States for the past 29 years. With respect to acquiescence by a public official in Jamaica, the IJ emphasized the evidence that the government has apprehended or killed the individuals who had harmed Henderson, and the fact that the PNP is no longer in power. In reaching this determination, the IJ noted that government acquiescence can include willful blindness.

Henderson appealed to the BIA. Henderson did not raise any challenge to the IJ's ruling that Henderson was ineligible for withholding of removal based on his conviction of a particularly serious crime. Thus, the BIA affirmed that ruling. With respect to Henderson's CAT claim, the BIA found no clear error with the IJ's factual findings. Applying de novo review, and relying on the IJ's analysis, the BIA determined that Henderson had not shown that it was more likely or not that he would be tortured. The BIA also determined that Henderson "did not show the required acquiescence by a public official in light of the arrest, prosecution, and killing of individuals who inflicted harm upon him." BIA Op. at 2. The BIA made clear that the legal standard for acquiescence included "the concept of willful blindness." Id. Accordingly, the BIA affirmed the IJ's denial of Henderson's CAT claim. This petition for review followed.

4

II.

We have jurisdiction under 8 U.S.C. § 1252(a)(1), subject to the discussion below.

Because Henderson was convicted of an aggravated felony,[3] our jurisdiction is limited to

constitutional claims and questions of law.  8 U.S.C. § 1252(a)(2)(C)-(D); Pareja v. Att'y

Gen. U.S., 615 F.3d 180, 186 (3d Cir. 2010).  We exercise plenary review over the

agency's legal determinations.  See id. at 192.  When, as here, the BIA adopts the

findings of the IJ and discusses some of the bases for the IJ's opinion, our review

encompasses both decisions.  See Guzman v. Att'y Gen., 770 F.3d 1077, 1082 (3d Cir.

2014).

III.

To succeed on his CAT claim,[4] Henderson had to establish that it is "more likely

than not" that he would be tortured should he return to Jamaica.  8 C.F.R. § 208.16(c)(2);

---

[3] The Court lacks jurisdiction to consider Henderson's argument—raised only in his stay motion—that he was not convicted of an aggravated felony, as he failed to exhaust that claim before the BIA.  See 8 U.S.C. § 1252(d)(1).  Henderson has not argued, and the record does not indicate, that the BIA was incompetent to consider such a claim, see Bonhometre v. Gonzales, 414 F.3d 442, 447-48 (3d Cir. 2005), or that there are any other grounds to excuse exhaustion or to deem the claim exhausted, see Lin v. Att'y Gen., 543 F.3d 114, 119-24 (3d Cir. 2008).  Moreover, even if the Court had jurisdiction, a conviction under 35 P.S. § 780-113(a)(30) for intent to distribute cocaine is an aggravated felony.  See Avila v. Att'y Gen. U.S., 826 F.3d 662, 666 (3d Cir. 2016).
[4] Henderson has waived any arguments regarding his application for withholding of removal by failing to present them in his brief.  See Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004).  Even if he were to challenge the agency's determination that he is ineligible for withholding because he was convicted of a particularly serious crime, we would lack jurisdiction to review that claim, as Henderson failed to exhaust it before the BIA, and has not argued that there are any grounds to excuse exhaustion.  See 8 U.S.C.

5

Sevoian v. Ashcroft, 290 F.3d 166, 174–75 (3d Cir. 2002).  He also needed to show that the torture would be inflicted "by or at the instigation of or with the consent or acquiescence of a public official."  8 C.F.R. § 208.18(a)(1).  The likelihood of torture is comprised of a factual component ("what is likely to happen to the petitioner if removed") and a legal one ("does what is likely to happen amount to the legal definition of torture").  Kaplun v. Att'y Gen., 602 F.3d 260, 271 (3d Cir. 2010).  Government acquiescence is similarly composed of a factual ("how public officials will likely act in response to the harm the petitioner fears") and legal component ("whether the likely response from public officials qualifies as acquiescence").  See Myrie v. Att'y Gen., 855 F.3d 509, 516 (3d Cir. 2017).  Here, the Court may only review the legal component of each inquiry.  See Myrie, 855 F.3d at 515.

To the extent that Henderson has challenged the agency's determination that he failed to show that it is "more likely than not" that he will be tortured in the event of his return to Jamaica, we lack jurisdiction to consider his claims.  Henderson's brief mentions that the IJ "tried to minimize" his fear of returning to Jamaica.  He does not argue that the agency ignored evidence, but rather disagrees with its weighing of the evidence.  Accordingly, this claim challenges the agency's factual findings, which we lack jurisdiction to review.  See Green v. Att'y Gen., 694 F.3d 503, 507 (3d Cir. 2012) (differentiating claim that evidence was ignored, from claim that IJ incorrectly weighed

§ 1252(d)(1); Bonhometre, 414 F.3d at 447-48; Lin, 543 F.3d at 119-24.

evidence in making factual determinations). We similarly lack jurisdiction to consider Henderson's challenge—raised only in his reply brief—to the agency's factual finding that he lived safely in Ocho Rios for five years. We can discern no other challenge to the agency's determination regarding the likelihood of torture.

Because the Board's holding regarding the likelihood of torture, which we cannot disturb, is dispositive, we need not reach Henderson's core argument that the agency employed an incorrect legal standard in determining that the Jamaican government would not "acquiesce" to his torture. See Pieschacon-Villegas v. Att'y Gen. U.S., 671 F.3d 303, 311 (3d Cir. 2011). In any event, it is evident from the record that the BIA and IJ considered "willful blindness." See Silva-Rengifo v. Att'y Gen. U.S., 473 F.3d 58, 70 (3d Cir. 2007). To the extent that Henderson challenges the agency's factual findings regarding how public officials will likely act in response to the harm he fears, we lack jurisdiction to review that claim. See Green, 694 F.3d 503 (determination that Jamaican government would not acquiesce in torture was factual determination that resulted from weighing of evidence, which the Court lacked jurisdiction to consider).[5]

---

[5] Henderson also argues that the BIA's application of clear error review to the IJ's factual findings was improper, without specifying how the BIA erred, other than to repeat his argument that the BIA applied the wrong standard for government acquiescence. Again, to the extent that Henderson raises a challenge the BIA's weighing of the evidence, we lack jurisdiction to review that claim. To the extent that Henderson attempts to raise a legal challenge, we note that the BIA followed its regulations and applied the proper clear error standard to its review of the IJ's factual determinations. See 8 C.F.R. § 1003.1(d)(3)(i); see also Wallace v. Gonzales, 463 F.3d 135, 141 (2d Cir. 2006) ("a review of the factual record by the BIA does not convert its discretionary determination

Finally, we note that Henderson has raised several ambiguous "Due Process" claims. We lack jurisdiction to consider these claims because they were not raised before the BIA. See 8 U.S.C. § 1252(d)(1); Zheng v. Gonzales, 422 F.3d 98, 107-08 (3d Cir. 2005). As with his other unexhausted claims, Henderson has not argued that there are any grounds to excuse exhaustion. See Bonhometre, 414 F.3d at 447-48; Lin, 543 F.3d at 119-24.[6] To the extent that these claims need not be exhausted, they remain undeveloped, and therefore they are meritless.

Accordingly, we will dismiss the petition for review in part and deny it in part.

---

as to whether a petitioner warrants [relief] into improper factfinding").

[6] We note that the BIA denied Henderson's motion to remand so that he could introduce new evidence of a January 2018 letter from Michael Henry. Henderson has not challenged that ruling. Even if he had, the BIA's determination was reasonable. See Huang v. Att'y Gen. U.S., 620 F.3d 372, 389-90 (3d Cir. 2010). The letter was cumulative of a July 2017 letter from Henry in the record, and the 2017 letter undercut Henderson's assertion that the 2018 letter was previously unavailable.