**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1858
_____

JOSE LANDESTOY NUNEZ
Petitioner
v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA
Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A046-551-644)
Immigration Judge: Leo A. Finston
_____

Argued March 12, 2019
_____

Before: MCKEE, PORTER, and ROTH, *Circuit Judges*.

(Filed:    July 24, 2019)

John P. Leschak    **[ARGUED]**
Leschak & Associates, LLC
180 South Street
Freehold, NJ 07728
            *Counsel for Petitioner*

Kathryn M. McKinney    **[ARGUED]**
Imran R. Zaidi
Office of Immigration Litigation
P.O. Box 878
Benjamin Franklin Station
Washington, DC 20044

_____

OPINION[*]

_____

PORTER, *Circuit Judge*.

Jose Landestoy Nunez petitions for review of a Board of Immigration Appeal's order denying cancellation of removal under the Immigration and Nationality Act § 240A(a), 8 U.S.C. § 1229b(a). Because the Board has the authority to reweigh discretionary factors when deciding whether to grant cancellation of removal, and we lack jurisdiction to review the Board's discretionary decisions, we must dismiss the petition.

I

Landestoy, a citizen of the Dominican Republic, entered the United States in 1998 when he was seven years old. Based on his uncle's United States citizenship, he was admitted as a lawful permanent resident.

Landestoy has an extensive criminal history; after his most recent conviction, the Department of Homeland Security charged him with removability. An immigration judge sustained the removal charge for a controlled substance offense under 8 U.S.C. § 1227(a)(2)(B)(i). Landestoy then sought cancellation of removal under § 1229b(a)(2).

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Landestoy's parents testified that because of their medical conditions and lack of English fluency, they would experience hardship if Landestoy were removed. Several witnesses testified that Landestoy had changed after a religious conversion in prison and would not return to a life of crime after release. The immigration judge credited Landestoy's own testimony, in which he expressed remorse for his past actions and commitment to redeeming himself after release from prison. He blamed his poor choices on marijuana addiction, but he has since completed a court-ordered rehabilitation treatment and attended Narcotics Anonymous meetings. Though Landestoy was never employed and has not filed an income tax return, he testified that he intends to work at a family friend's barbershop or at his brother's business if his petition is granted.

Upon weighing these factors, the immigration judge determined that although there were "numerous" adverse factors that favored removal, including Landestoy's "serious," "recent," and "worrisome" criminal history, the positive factors[1] outweighed these. So the immigration judge granted Landestoy's application for cancellation of removal. The Board reversed, concluding that Landestoy was not entitled to discretionary cancellation of removal. Landestoy then timely petitioned this Court for review.

II

---

[1]    Positive factors to consider when considering discretionary cancellation of removal are proof of genuine rehabilitation if a criminal record exists, family ties and residency of long duration in the United States, hardship to alien and family, service in Armed Forces, history of employment, property and business ties, value and service to the community, and evidence of good character. *See Matter of Marin,* 16 I&N Dec. 581, 584–85 (BIA 1978); *Matter of Wadud*, 19 I&N Dec. 182, 186–87 (BIA 1984).

3

We review questions about our own jurisdiction *de novo. Borrome v. Att'y Gen.*, 687 F.3d 150, 154 (3d Cir. 2012). We lack jurisdiction to review the denial of discretionary relief, including cancellation of removal. 8 U.S.C. § 1252(a)(2)(B)(i); *Mendez-Reyes v. Att'y Gen.*, 428 F.3d 187, 189 (3d Cir. 2005). We also lack jurisdiction to review "any final order of removal against an alien who is removable" for having been convicted of violating a law relating to a controlled substance. 8 U.S.C. § 1252(a)(2)(C).

But we can hear constitutional claims or questions of law raised upon a petition for review. 8 U.S.C. § 1252(a)(2)(D); *see also Paredes v. Att'y Gen.*, 528 F.3d 196, 198 (3d Cir. 2008). This exception is "narrowly circumscribed" in that it is limited to "colorable claims or questions of law." *Chiao Fang Ku v. Att'y Gen.*, 912 F.3d 133, 144 (3d Cir. 2019) (citing *Cospito v. Att'y Gen.*, 539 F.3d 166, 170 (3d Cir. 2008)). "The question of our jurisdiction over a colorable legal claim does not turn on whether that claim is ultimately meritorious," but "a party may not dress up a claim with legal clothing to invoke this Court's jurisdiction." *Pareja v. Att'y Gen.*, 615 F.3d 180, 187 (3d Cir. 2010). We review questions of law *de novo. Guzman v. Att'y Gen.*, 770 F.3d 1077, 1082 (3d Cir. 2014). We defer to the Board's reasonable interpretations of the statutes it is charged with administering. *Id.* (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)).

A

Landestoy argues that the application of an improper standard of review by the Board is a question of law. But "[t]o determine whether we have jurisdiction … we must study the arguments asserted … [and] determine, regardless of the rhetoric employed in the petition, whether it merely quarrels over the correctness of the factual findings or

4

justification for the discretionary choices made by the [Board]." *Noble v. Keisler*, 505 F.3d 73, 78 (2d Cir. 2007) (quotation marks and citation omitted).

Landestoy asserts that the Board's review of the immigration judge's balancing of equities constituted impermissible *de novo* review. Specifically, he argues that the Board improperly reviewed *de novo*, rather than for clear error, the issue of his rehabilitation. He also contends that the Board's discussion of his rehabilitation impermissibly constituted factfinding under 8 C.F.R. § 1003.1(d)(3)(iv). Landestoy's arguments focus on the Board's statement: "However, we are not persuaded that this 11th hour declaration supports a finding of genuine rehabilitation." He argues that this language conflicts with the immigration judge's observations that Landestoy was "sincere about his feeling about his past violations of the law and his intent on rectifying things by providing some community service to society." The immigration judge noted "that [Landestoy] does not have a track record in the United States, at least as a non-inmate, to show great past contributions to society" but added "the Court is optimistic and believes that the respondent will do so in the future."

Other Courts of Appeals have held that the Board engaged in improper *de novo* review when, for example, it drew conclusions expressly contrary to the immigration judge's factual findings. *See Crespin-Valladares v. Holder*, 632 F.3d 117, 127–28 (4th Cir. 2011) (holding that the Board engaged in *de novo* review of facts when it ignored the immigration judge's finding that the gangs targeted the alien because of his uncle's cooperation with the Salvadoran government and instead concluded that the gangs intimidated the alien so he would not testify himself); *Rodriguez v. Holder*, 683 F.3d

5

1164, 1177 (9th Cir. 2012) (holding that the Board engaged in prohibited *de novo* review in finding a contradiction in a witness's testimony and making its own finding about that witness's credibility).

Contrary to Landestoy's assertion, the Board did not overturn a factual finding of the immigration judge. In his discussion of discretionary removal factors, the immigration judge noted Landestoy's remorse for past actions and expressed optimism about his prospects. But the Board is free to reweigh the immigration judge's comments regarding rehabilitation together with the other equitable factors in determining whether an alien merits cancellation of removal. 8 C.F.R. § 1003.1(d)(3)(i)–(ii); *Noble*, 505 F.3d at 76–77 (holding that although the immigration judge found the alien rehabilitated, the Board may discount that rehabilitation when it stated that the alien's conduct "leaves us with very serious doubts as to the authenticity of [the alien's] rehabilitation").

In *Noble,* the Board doubted the "authenticity" of the alien's rehabilitation while reweighing it against the negative factors discussed by the immigration judge. Here, the Board similarly reweighed Landestoy's rehabilitation and other positive factors against the negative factors and disagreed with the immigration judge's ultimate conclusion. That was a permissible exercise of the Board's discretion to grant or deny an application for cancellation of removal. *See also Guevara v. Gonzales*, 472 F.3d 972, 975 (7th Cir. 2007) (holding that the "relative weight of [the alien's] rehabilitation in the balancing process is not 'factfinding' subject to the clearly erroneous standard of review; it is a matter of discretion and judgment and is subject to *de novo* review by the [Board]"); *Wallace v. Gonzalez*, 463 F.3d 135, 141 (2d Cir. 2006) ("Although any reversal by the [Board] of an

[immigration judge's] discretionary determination must involve consideration of the underlying facts, a review of the factual record by the [Board] does not convert its discretionary determination as to whether a petitioner warrants [relief] into improper factfinding.").

While we may empathize with Landestoy and his supportive family, he is asking us to review the Board's discretionary judgment, and we lack jurisdiction to second-guess the Board's reweighing of the cancellation of removal factors.

B

Landestoy argues that the Board abused its discretion when it did not expressly consider his conversion to evangelical Christianity as corroboration of his claimed rehabilitation. Abuse-of-discretion arguments related to cancellation of removal that do not present constitutional or legal claims are not reviewable. *Patel v. Att'y Gen.*, 619 F.3d 230, 232 (3d Cir. 2010). A "claim that the [Board] has completely ignored the evidence put forth by a petitioner is an allegation of legal error." *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008). But Landestoy's contention that the Board did not explicitly discuss a particular aspect of the evidence is essentially another challenge to the Board's exercise of discretion, which we lack jurisdiction to review. *See Saloum v. U.S. Citizenship & Immig. Servs.*, 437 F.3d 238, 244 (2d Cir. 2006).

The Board did not completely ignore Landestoy's evidence. While the Board did not specifically evaluate Landestoy's profession as an evangelical Christian, it considered Landestoy's remorse and intent to fix his past wrongs, which Landestoy has characterized as fruits of his religious faith. Because Landestoy challenges the Board's exercise of

7

discretion in not adequately crediting his religious profession, we lack jurisdiction to review this claim.

## III

Landestoy's claims challenge the Board's discretionary decisions, so we lack jurisdiction to review Landestoy's application for cancellation of removal. As a result, we will dismiss his petition.

McKEE J., concurring in the judgment:

Although I agree that we must dismiss this appeal and therefore join the judgment of my colleagues, my analysis differs substantially from theirs. As the Majority Opinion quite correctly recognizes, under 8 U.S.C. § 1229b(a) "the Board has the authority to reweigh discretionary factors" in resolving Landestoy-Nunez's appeal of the IJ's grant of his request for discretionary relief.[1] The primary issue on appeal is whether the Board's rejection of the IJ's conclusion that Landestoy-Nunez is now rehabilitated, despite his criminal history, is a new factual determination that would give us jurisdiction or an unfavorable exercise of discretion that would not. As I explain, I do believe there is an underlying legal issue here that would support our subject matter jurisdiction. However, it is not the argument that Landestoy-Nunez makes.

Landestoy-Nunez makes two arguments on appeal. "First Petitioner argues that the BIA's decision [that his rehabilitation is not sufficient to justify cancellation of removal] was based on impermissible fact-finding in violation of 8 C.F.R. § 1003.1(d)(3)(iv)."[2] His second related argument that is endemic in the first one is that "the BIA violated 8 C.F.R. § 1003.1(d)(3)(i) by improperly subjecting the findings of the [IJ] to *de novo* review, rather than 'clear error' review."[3] Those are the only two arguments that Landestoy-Nunez raises to support his claim that we have jurisdiction.

---

[1] Maj. Op. at 1.
[2] Petitioner's Br. at 2.
[3] *Id*.

He cites several cases to support his claim that the BIA must be reversed because it impermissibly engaged in fact finding.[4] My colleagues cite several cases to support their conclusion that the BIA simply exercised its discretion in concluding that Landestoy-Nunez had not sustained his burden of showing that he was entitled to relief despite substantial evidence of rehabilitation.

The BIA did not dispute the IJ's conclusion that Landestoy-Nunez and the many witnesses who appeared and testified on his behalf were credible. They all testified that he was a changed person who was now committed to turning his life around.[5] However, the BIA did not think that evidence was sufficient to outweigh Landestoy-Nunez's admittedly significant criminal past. The BIA couched that conclusion in language suggesting that it was the result of an exercise of discretion, but it can also be argued that the BIA's conclusion is nothing more than a factual finding that Landestoy-Nunez is not sufficiently rehabilitated to justify the favorable exercise of discretion necessary to grant him cancellation of removal.

Although, as the Majority Opinion notes, the BIA clearly used language that suggests its conclusion was an exercise of discretion and not fact finding, that should not be determinative. I agree, of course, that a Petitioner cannot attempt to evade a discretionary decision by "dressing up" a discretionary issue as one of appellate fact

---

[4] Petitioner's Br. at 19–21 (citing e.g., *Padmore v. Holder*, 609 F.3d 62, 68 (2d Cir. 2010) (reversing the BIA decision where the BIA "decided to reverse the IJ, *not* on the basis of having found clear error, but instead based on disputed material facts with respect to which the IJ reached no resolution.")).

[5] App'x B at 5 (noting that Petitioner's family members "appeared in court and 'spoke eloquently and with great feeling on [Landestoy-Nunez's] behalf' (IJ at 6).").

finding.[6] However, it is also true that the BIA cannot evade our exercise of jurisdiction by dressing up a factual issue as a discretionary one.

Whether a decision overturning an IJ's conclusion about one's rehabilitation and changed life based upon a given set of facts is itself a finding of fact or an exercise of discretion is a more difficult question than my colleagues suggest. Rehabilitation is, after all, as much (if not more) judgment than fact. It is both a prediction and a factual conclusion in the form of a reasoned judgment about one's risk for future criminality. Two reasonable observers can consider the same set of facts and reach different conclusions about what those facts establish. That is what happened here. The question posed by the debate over our jurisdiction asks us to distinguish between the factual conclusion of rehabilitation made by the IJ and the subsequent assessment of whether those facts were actually sufficient to prove the fact of rehabilitation. The issue is complicated by the less than artful language used by the BIA in explaining why it disagreed with the IJ's conclusion. Nevertheless, although the BIA could have been much more precise in its explanation, in the final analysis, the BIA accepted the facts found by the IJ but concluded that those facts were not sufficient to justify the favorable exercise of discretion necessary to grant cancellation of removal. However, that is somewhat obscured by the focus on "rehabilitation." I therefore agree that, as the issues are posed to us, we do not have jurisdiction.

---

[6] Petitioner's Br. at 3 (*citing Noble v. Keisler*, 505 F.3d 73 (2d Cir. 2007)).

My concern here, and the issue that prevents me from joining my colleagues'

analysis, is that I believe there is a legal question and we therefore could exercise

jurisdiction. However, Landestoy-Nunez has not raised it.

The BIA imposed an impossible burden upon Landestoy-Nunez. In reversing the

IJ's decision, the BIA concluded it would not exercise discretion in his favor because,

despite substantial evidence that he has turned himself around, Landestoy-Nunez failed to

offer "powerful evidence that he has no propensity to reoffend."[7] Yet, given the reality

of human frailty and the strength of human emotions, I submit that it is impossible for

anyone to empirically establish that he or she has "no propensity" to commit a crime. I

therefore believe that we would have jurisdiction to review a claim that the BIA

conditioned a favorable exercise of discretion upon an erroneous legal standard. That is a

legal error, not a discretionary one. However, given the arguments Landestoy-Nunez is

making to us, we are precluded from reviewing that claim.[8]

Landestoy-Nunez is not arguing that the BIA imposed an impossible evidentiary

burden on him and thus committed a legal error (and possibly denied him the due process

of law). As I noted at the outset, he is only arguing that the BIA engaged in improper

fact finding as opposed to exercising its discretion and that it undertook a *de novo* review.

As the Majority notes, we and our sister circuit courts of appeals remand where the BIA

---

[7] App'x B at 5.

[8] *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 599 (3d Cir. 2003) ("Because
Abdulrahman failed to raise the issue before the Board as to whether the IJ had applied an
excessively stringent standard to his claim . . . we are precluded from reviewing his claim
on that ground.").

ignores an IJ's findings and replaces them with its own version of the facts, but affirm where the BIA does "not overturn a factual finding by the IJ," but rather "determine[s] that a favorable exercise of discretion [i]s not warranted when the positive factors . . . [a]re balanced against the negative factors."[9]

For example, in addition to the cases cited by the Majority, in *Guevara v. Gonzales*,[10] Guevara argued that the IJ found, as a matter of fact, that he was "rehabilitated" and that the BIA failed to apply the clearly erroneous standard of review to that finding.[11] In *Guevara*, the IJ specifically found: "The record indicates that [respondent] has not been convicted of any crime since 1996. I think, therefore, that it can be said that the respondent has been reformed so that he has chosen a way of life where future criminal misconduct is unlikely[.]"[12] The BIA "adopt[ed] th[e] findings" of the IJ, but then concluded: "On the one hand, 9 years have passed since the respondent's criminal conduct. On the other hand, he still has not fully acknowledged his wrongdoing. All in all, the seriousness of the respondent's sexual assault convictions, as well as the circumstances of those offenses, outweigh the favorable equities in this case."[13] It therefore "consider[ed] rehabilitation to be a neutral factor," and agreed with the government that Guevara did not merit cancellation of removal.[14]

---

[9] *Palmer v. Attorney General*, 418 F. App'x 138, 138 (3d Cir. 2011).
[10] 472 F.3d 972 (7th Cir. 2007).
[11] *Id.* at 975.
[12] *Id.* at 974–75.
[13] *Id.* at 975.
[14] *Id.*

The Court of Appeals for the Seventh Circuit explained that "the [BIA] decision specifically adopted the IJ's findings on the positive and negative factors in Guevara's case," but simply "reweighed the positive and negative factors and concluded that rehabilitation was a neutral factor rather than a positive one."[15]

On the other hand, where the BIA explicitly makes a finding that is contrary to one made by the IJ, it commits an error of law. For example, in *Forteau v. Attorney General*,[16] we found that the IJ previously made a factual finding that the alien "had exhibited genuine remorse for his actions."[17] On review, "[t]he BIA . . . noted, without mentioning the IJ's opposite conclusion, that '[i]t is also questionable as to whether the respondent exhibited remorse for or rehabilitation from his crimes during the proceeding below because the respondent tried to explain away his actions.'"[18] We remanded because the "BIA simply ignored the [IJ's] findings and replaced them with its own version of the facts."[19]

Similarly, in *Kaplun v. Attorney General*,[20] the BIA impermissibly "reexamined the record and conducted *de novo* fact-finding instead of applying the clearly erroneous

---

[15] *Id*. at 975. Although the court said that rehabilitation was a negative factor, it actually held that the demonstrated rehabilitation did not warrant relief. If rehabilitation had actually been a "neutral" factor, there would not have been anything for the BIA to weigh in the balance except the petitioner's criminal past. There would not have been anything to balance or weigh.

[16] 240 F. App'x 531 (3d Cir. 2007) (not precedential, cited only for comparison).

[17] *Id*. at 534.

[18] *Id*.

[19] *Id*.

[20] 602 F.3d 260 (3d Cir. 2010).

standard."[21] There, the BIA "disagreed with the IJ crediting [Petitioner's expert] witness's statements regarding what would happen in [Petitioner's] specific situation if he were removed, dismissing it as speculative."[22] We held "[t]his appears to have been reversal of a factual finding under a *de novo* standard, an impermissible BIA action."[23]

The record here is to the contrary. Here, the IJ explicitly found:

(1) That Landestoy was "sincere about his feelings about his past violations of the law and his intent on rectifying things by providing some community service to society;"[24]
(2) That "the Court is optimistic and believes that the respondent will . . . contribute to society . . . in the future;"[25] and
(3) That "[c]redibility is not an issue here at all. . . . The respondent did not even make the smallest attempt to mitigate or minimize his criminal conduct. He took full responsibility and did not try to project any responsibility to other people around him, as often happens in these cases."[26]

My colleagues correctly note that the BIA did not find any facts that were explicitly contrary to these, despite concluding that Landestoy-Nunez did not merit cancellation of removal. It recognized "[t]he Immigration Judge found the respondent expressed sincere remorse for his crimes."[27] It also stated "[m]oreover, the Immigration Judge acknowledged that the respondent indicated an intent 'in rectifying things by providing some community service to society in order to help youth in his community

---

[21] *Id*. at 272.
[22] *Id*. (internal quotations omitted).
[23] *Id*.
[24] App'x D at 15.
[25] *Id*.
[26] *Id*. at 13.
[27] App'x B at 5.

avoid making mistakes that he has made.'"[28]  However, the BIA concluded that this did not show that Landestoy-Nunez merited relief from removal. I agree that, despite the BIA's rather confusing language, it concluded that the facts which the IJ found do not merit the favorable exercise of discretion required to grant cancellation of removal. I therefore agree that we do not have jurisdiction to review that determination.

I reiterate that had Landestoy argued that the BIA committed legal error by imposing an impossible burden on him, we would have jurisdiction to consider his case. However, "[b]ecause [Landestoy-Nunez] failed to raise that issue in his appeal to the Board, we do not have jurisdiction to consider the question."[29]  Accordingly, I join the judgment.

---

[28] *Id*.

[29] *Abdulrahman*, 330 F.3d at 594.